UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| JACKSON PURCHASE MEDICAL CENTER and LAKE CUMBERLAND REGIONAL HOSPITAL,<br><br>     **Plaintiffs,**<br><br>**V.**<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE AND MEDICAID SERVICES, et al.,<br><br>     **Defendants.** | CIVIL ACTION NO. 6:14-cv-1-KKC<br><br><br><br>__OPINION AND ORDER__ |

\*\*\* \*\*\* \*\*\*

Plaintiffs ("the Providers") appeal the final administrative decision of the Secretary of Health and Human Services ("the Secretary") to exclude certain low-income populations from the formula used to determine whether a Provider qualifies for increased *Medicare* reimbursement rates. Part of the Medicare formula includes patient days for individuals "eligible for medical assistance under a State plan approved under subchapter XIX." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Providers assert that the Secretary unlawfully interpreted this statutory provision. The Court will affirm the Secretary's interpretation because the low-income patients that the Providers seek to add in the Medicare formula are not "eligible for medical assistance" under an approved State plan.

## I. BACKGROUND

### A. MEDICARE AND MEDICAID

Congress created the Medicare and Medicaid programs through Titles XVIII and XIX of the Social Security Act. Medicare is a federally funded health insurance program for

older and disabled individuals. 42 U.S.C. § 1395 *et seq.* Medicaid is a federal grant program—unavailable to Medicare recipients—that requires each state to create federal-state partnerships to provide certain medical services to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. The design, funding, and reimbursement for these programs are distinct; however, both programs seek to improve the quality of care for vulnerable populations.

### 1. Medicare Reimbursement

Medicare utilizes the prospective payment system ("PPS") to reimburse providers for inpatient hospital services. 42 U.S.C. § 1395ww(d). Generally, PPS sets a fixed reimbursement rate "for each discharge, based on the patient's diagnosis, and regardless of actual cost." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 406 n.3 (1993) (citing 42 U.S.C. § 1395ww(d)). The Secretary may, however, adjust PPS reimbursement rates based on hospital-specific factors. 42 U.S.C. § 1395ww(d)(5). For example, "the Secretary shall provide . . . for an additional payment amount for each [provider that] serves a significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). This provision is known as the Medicare disproportionate share hospital ("Medicare DSH") adjustment.

### 2. Medicare DSH

Qualification for Medicare DSH—and the degree of an adjustment—depends on whether a provider meets a defined "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(v). A provider's "disproportionate patient percentage" is the sum of two fractions. 42 U.S.C. § 1395ww(d)(5)(F)(vi). The first fraction is the "Medicare fraction." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The second fraction is a proxy for the percentage of a provider's low-income, *non-Medicare* patients; this is the "Medicaid fraction." The

numerator of the Medicaid fraction consists of the number of patient days a provider treated "patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to [Medicare] benefits" and patient days a provider treated patients receiving "benefits under a demonstration project," and the denominator of the Medicaid fraction consists of the total number of the provider's patient days. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Providers contest the Secretary's interpretation of the patients that should be credited in the numerator of the "Medicaid fraction."

### 3. Medicaid Reimbursement

Medicaid is a state-specific program where, pursuant to a federally approved "state Medicaid plan," the federal government provides matching payments for medical assistance to eligible, low-income individuals. The "state Medicaid plan" specifies the qualifications for eligibility and establishes the nature and scope of the medical care and services covered pursuant to the state plan. 42 C.F.R. § 430.10. The Secretary must approve the state plan before federal matching payments commence, but "[c]onsiderable deference is provided to states under the [Medicaid] Act to decide 'eligible groups, types and range of services, payment levels for services, and administrative and operating procedures.'" *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 65 F.3d 508, 516 n.10 (6th Cir. 1995) (quoting 42 C.F.R. § 430.0); 42 U.S.C. §§ 1396a, 1396d(b). Federal matching payments are available for "the *total amount expended* . . . as medical assistance under the State plan," 42 U.S.C. § 1396b(a)(1) (emphasis added), and the states distribute these federal funds for medical care and services described in the state Medicaid plan, 42 C.F.R. § 430.0.

### 4. *Medicaid DSH*

Medicaid also requires an upward reimbursement rate adjustment for providers serving a disproportionate share of low-income patients. All state Medicaid plans must establish a "process for determination of rates of payment under the plan . . . [that] take[s] into account . . . the situation of [providers] which serve a disproportionate number of low-income patients . . . ." 42 U.S.C. § 1396a(a)(13)(A). This provision is known as the Medicaid disproportionate share hospital ("Medicaid DSH") adjustment.

Although both Medicare and Medicaid provide DSH adjustments, Medicare DSH and Medicaid DSH operate differently and address different objectives. Medicare DSH utilizes a rigid formula set by the Medicare statute. *See* 42 U.S.C. § 1395ww(d)(5)(F). Conversely, Medicaid DSH adjustments are defined by each state, and the Medicaid statute permits states significant latitude in determining which patients to include in its Medicaid DSH definition. *See* 42 U.S.C. § 1396r-4(a)(1). A state's Medicaid DSH adjustment may include "patients eligible for medical assistance under a State plan approved under this subchapter *or [other] low-income patients.*" 42 U.S.C. § 1396r-4(c)(3)(B) (emphasis added). Thus, Congress explicitly allowed a state to define its Medicaid DSH adjustment to include patients not eligible for *any* assistance contemplated under the Social Security Act.

Congress also clarified that Medicaid DSH adjustments are intended to satisfy a broad statutory purpose.

> The purpose of the Medicaid DSH payment adjustment is to assist those facilities with high volumes of Medicaid patients in meeting the costs of providing care to the *uninsured* patients that they serve, *since these facilities are unlikely to have large numbers of privately insured patients through which to offset their operating losses on the uninsured.*

H.R. Rep. No. 103-111, at 211 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 538 (emphasis added). The Administrator of the Centers for Medicare and Medicaid Services ("CMS") also noted that Medicaid DSH payments are paid *prospectively* and not in contemplation of any specific medical services or diagnoses. (DE 1-3 at 17.) These prospective payments help providers offset expenses associated with treating uninsured, low-income patients. (DE 1-3 at 17 ("The Medicaid DSH payment is not considered a "payment" for the year for which the data used in the calculation was taken and is not intended as even an indirect compensation for those patient days.").)

Despite each state's broad discretion in defining its Medicaid DSH adjustments, every state must include this definition in its state Medicaid plan for approval from the Secretary. 42 U.S.C. § 1396r-4(a). Congress requires approval of this definition to guarantee that Medicaid DSH payments assist medical facilities providing care to high volumes of low-income patients rather than "for unrelated purposes, such as building roads, operating correctional facilities, [or] balancing State budgets." H.R. Rep. No. 103-111, at 212 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 539; *see also Univ. of Wash. Med. Ctr. v. Sebelius*, 634 F.3d 1029, 1034–35 (9th Cir. 2011). Therefore, the Secretary's scrutiny of a state's Medicaid DSH definition is limited to verifying that these payments are directed to low-income medical care and service. *See Nazareth Hosp. v. Sec'y United States Dep't of Health & Human Servs.*, 747 F.3d 172, 183 (3d Cir. 2014). The Secretary does not, however, approve the *details* of a state's plan to *use* Medicaid DSH payments to assist medical facilities providing care to high volumes of low-income patients. *See id.*

## B. KENTUCKY'S MEDICAID PLAN AND THE KENTUCKY HOSPITAL CARE PROGRAM

The Kentucky Medicaid Plan established the requirements for statewide Medicaid eligibility. For example, a family of three could earn no more than thirty-nine percent of the

federal poverty level ("FPL") to receive Kentucky Medicaid benefits. (DE 22 at 10–11.) The state plan also described Kentucky's Medicaid DSH definition. Kentucky's Medicaid DSH definition included "traditional" Medicaid patients and Kentucky Hospital Care Program ("KHCP") patients. (*See* DE 1-3 at 2–3); *see also* 42 U.S.C. § 1396r-4(c)(3)(B) (permitting a state to include "patients eligible for medical assistance under a State plan approved under this subchapter *or [other] low-income patients*" in its Medicaid DSH definition).

KHCP is a state program that provides medical assistance to individuals and families that (1) can demonstrate Kentucky residency; (2) earn less than one hundred percent of the FPL; and (3) are ineligible for traditional Medicaid. (DE 22 at 11.) Thus, a family of three earning forty-three percent of the FPL could *not* qualify for Medicaid but could receive medical assistance under KHCP. KHCP is funded through state and local payments, and Kentucky also authorizes Medicaid DSH payments to offset the costs providers incur when treating KHCP patients. (*See* DE 1-2 at 9; DE 22 at 12.)

Kentucky submitted its state Medicaid Plan, including the state Medicaid DSH definition, to the Secretary for approval. The Secretary approved the Kentucky Medicaid Plan. (DE 22 at 10.)

## C. ADMINISTRATIVE PROCEEDINGS

The Providers are acute care hospitals located in the Eastern District of Kentucky that participated in Medicare, Medicaid, and KHCP. *Medicare* funds are distributed to providers through fiscal intermediaries. 42 C.F.R. § 405.1801(b)(1). The Providers submitted cost reports to their fiscal intermediary. (DE 1-2 at 5.) Cost reports include information necessary to determine PPS reimbursements and the Medicare DSH adjustment. *See Metro. Hosp. v. United States Dep't of Health & Human Servs.*, 712 F.3d 248, 254 (6th Cir. 2013). The Providers submitted cost reports that included both Medicaid

*and* KHCP patient days in their Medicare DSH adjustment, but the fiscal intermediary disagreed and excluded KHCP patient days from the Providers' Medicare DSH adjustment. (DE 1-2 at 5.) As a result, the Providers received a significantly lower Medicare DSH reimbursement.

The Providers filed a timely administrative appeal of the fiscal intermediary's decision to the Provider Reimbursement Review Board ("PRRB"). (DE 1-2). The PRRB affirmed the fiscal intermediary's decision to exclude KHCP patient days from the Providers' Medicare DSH adjustment. (DE 1-2 at 10.) The Providers appealed the PRRB's decision to the Administrator of CMS for final agency review. (DE 1-3). The Administrator affirmed the PRRB's decision. (DE 1-3 at 21.) The Administrator's decision constituted the final administrative decision of the Secretary. The Providers timely filed the present action to seek judicial review of the Secretary's administrative decision. (DE 1). The Providers and the Secretary filed cross motions for summary judgment. (DE 22; DE 29).

## II. DISCUSSION

This Court has jurisdiction to review any final decision of the PRRB if a civil action is timely commenced after notice of the Secretary's reversal, affirmance, or modification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1).

The Social Security Act incorporates the standards of judicial review established for agencies pursuant to Title 5 Chapter 7. 42 U.S.C. § 1395oo(f)(1). This Court reviews factual findings for substantial evidence, 5 U.S.C. § 706(2), and analyzes the Secretary's interpretation of the Medicare and Medicaid statutes under the two-step process established in *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If so, the court and the agency "must give effect to the

unambiguously expressed intent of Congress." *Id.* at 843. But, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

The issue in this matter concerns implementation of the Medicare DSH statutory language: "eligible for medical assistance under a State plan approved under subchapter XIX." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Providers assert that the statute "plainly requires KHCP patients to be counted," and—therefore—the Secretary's interpretation is not accorded deference. (DE 22 at 16–21.) Because the Court finds that "eligible for medical assistance under a State plan approved under subchapter XIX" unambiguously excludes patients receiving KHCP benefits, the Court rejects the Providers' *Chevron* Step One interpretation.

The statutory language defines which patients may be credited in the numerator of the "Medicaid fraction" of the Medicare DSH formula. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi). The more patients lawfully included in the numerator, the greater the Medicare DSH adjustment. But the statute only permits a provider to include patients in the numerator that meet following requirements: (1) patients must receive—or be eligible to receive—medical assistance (2) pursuant to a State plan approved under subchapter XIX.[1] KHCP patients do not receive "medical assistance" as defined by the Social Security Act and KHCP is not a State plan approved under subchapter XIX; therefore, a provider may not include KHCP patients in the numerator of the "Medicaid fraction" of the Medicare DSH formula.

---

[1] The statue also permits a provider to include patients receiving benefits under a "demonstration project" in the numerator, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); however, that provision is not at issue in this matter.

## A. MEDICAL ASSISTANCE

A provider must give "medical assistance" to qualifying patients for the provider to include the patient in the numerator of the Medicare DSH adjustment formula. "Medical assistance" is not defined in Title XVIII, the Medicare provisions, but is defined in Title XIX, the Medicaid provisions. Both Titles XVIII and XIX are part of the Social Security Act, and textual canons dictate that "medical assistance" has the same meaning in the Medicare DSH statute as in the Medicaid statutes.

"A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). But "[c]ontext counts." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 576 (2007); *see also Util. Air Regulatory Group v. E.P.A.*, 134 S. Ct. 2427, 2441 (2014). "[I]t is fundamental that a section of a statute should not be read in isolation from the context of the whole Act." *Richards v. United States*, 369 U.S. 1, 11 (1962); *see also King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (Courts "must read words in their context and with a view to their place in the overall statutory scheme . . . [because courts must] construe statutes, not isolated provisions." (internal quotations omitted)). For example, the presumption of statutory consistency may be rebutted if it is obvious that Congress intended that the statutory provisions could define the disputed term differently; if the disputed term is broad and frequently defined differently; and if an agency adopted "longstanding, reasonable, and differing interpretations" of the disputed term. *Envtl. Def.*, 549 U.S. at 574–76.

Here, "[n]othing in the context of the Social Security Act overcomes" the presumption of statutory consistency. *Univ. of Wash. Med. Ctr.*, 634 F.3d at 1034; *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 179–80 (D.C. Cir. 2008). Additionally, the Medicare

DSH provision explicitly references Title XIX, *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); therefore, it is natural to incorporate the Title XIX definition to this provision, *Univ. of Wash. Med. Ctr.*, 634 F.3d at 1034; *see also United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371–76 (1988).

Accordingly, the canons of textual integrity decisively favor incorporating the Medicaid statutory definition of "medical assistance" to the Medicare DSH statute. The Medicaid statute defines "medical assistance" as "payment of part or all of the cost of [certain enumerated categories of] care and services." 42 U.S.C. § 1396d(a).

KHCP is funded through local, state, and federal funds. (*See* DE 1-2 at 9; DE 22 at 12.) The federal funds are not disbursed from the federal government; rather, Kentucky chose to designate Medicaid DSH payments to KHCP. (*See* DE 1-2 at 9; DE 22 at 12.) Also, Medicaid DSH payments are distributed *prospectively* and not as remuneration for part or all of the cost of any medical care or services. (DE 1-3 at 17.) Because Medicaid DSH payments are distributed prospectively and not directed towards specific care or services, Medicaid DSH funds do not constitute "medical assistance." *See* 42 U.S.C. § 1396d(a). Therefore, KHCP patients do not receive—and are not capable of receiving—"medical assistance" from the federal government and may not be credited in the numerator of the "Medicaid fraction" of the Medicare DSH formula. *Univ. of Wash. Med. Ctr.*, 634 F.3d at 1034–35; *Adena Reg'l Med. Ctr.*, 527 F.3d at 179–80; *see also Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 274 (6th Cir. 1994) (noting that "the word 'eligible' refers to whether a patient is capable of receiving federal medical assistance").

## B. APPROVAL UNDER SUBCHAPTER XIX

The Medicare DSH statute also requires patients receive medical care pursuant to "a State plan approved under subchapter XIX." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The

Providers assert that, in approving the Kentucky Medicaid Plan, the Secretary also approved the KHCP program (*see* DE 22 at 10–12); however, the Providers conflate approval of a *definition* with approval of a *plan*.

KHCP is a Kentucky program for low-income individuals distinct from Medicaid. (*See* DE 22 at 11–13.) Kentucky defined and approved the program. Kentucky then included this program in its definition of the Medicaid DSH adjustment, and the Secretary approved the *definition* of Kentucky's Medicaid DSH adjustment. The Secretary did not approve the qualifications, nature, or scope of the KHCP program. *See* H.R. Rep. No. 103-111, at 212 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 539 (noting that the Secretary must approve a state's Medicaid DSH definition to establish that a state will use Medicaid DSH payments to treat low-income patients rather than "for unrelated purposes, such as building roads, operating correctional facilities, [or] balancing State budgets").

Thus, the Secretary did not approve the KHCP *plan* under subchapter XIX, and KHCP patients may not be credited in the numerator of the "Medicaid fraction" of the Medicare DSH formula. *See Adena Reg'l Med. Ctr.*, 527 F.3d at 178–79.

### III. CONCLUSION

Although KHCP requires participating providers to care for low-income patients, KHCP patients do not—and are not eligible to—receive "medical assistance" within the meaning of the Medicare DSH statute and the Secretary does not approve the KHCP program. Therefore, providers may not include KHCP patients in the numerator of the "Medicaid fraction" of the Medicare DSH formula. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

Accordingly, **IT IS ORDERED** as follows:

1. Plaintiffs' motion for summary judgment (DE 22) is **DENIED**;

2. Defendants' motion for summary judgment (DE 29) is **GRANTED**; and

11

3. A judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated August 12, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY